UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ronald Martinez Enamorado,<br><br>                          Petitioner,<br><br>                  -v-<br><br>Kenneth Genalo, *in his official capacity as Field Office Director of New York, Immigration and Customs Enforcement*; Kristi Noem, *in her official capacity as Secretary of Homeland Security*; and Pam Bondi, *in her official capacity as Attorney General*,<br><br>                          Respondents. | 2:26-cv-817<br>(NJC) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

      On February 12, 2026, Ronald Martinez Enamorado, the husband of a U.S. citizen with no criminal history and a residence in New York of more than one decade, filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus ("Pet."), ECF No. 1.) That detention began on February 11, 2026, when ICE officers with their guns drawn stopped Mr. Enamorado's vehicle as he was driving to work, banged on the car window, smashed the window, dragged him out of the car, threw him to the ground, and then arrested him. (Pet ¶ 11.) The Petition argues that ICE's detention of Mr. Martinez Enamorado without notice and opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Administrative Procedures Act ("APA"), and the Fourth Amendment to the U.S. Constitution. The Petition seeks the following relief: (1) writ of habeas corpus requiring Respondents to immediately release Mr. Martinez Enamorado without

GPS monitoring; (2) a declaration that Mr. Martinez Enamorado's detention violates the Due Process Clause of the Fifth Amendment and the APA; (3) an award of reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and (4) any further relief this Court deems just and proper. (Pet. at 11).[1] For the reasons explained below, the Petition is GRANTED in part.

Respondents are federal government officials named in their official capacities: (1) Kenneth Genalo, in his official capacity as Field Office Director of New York for ICE; (2) Kristi Noem, in her official capacity as Secretary of Homeland Security; and (3) Pam Bondi, in her official capacity as United States Attorney General.

Respondents have no objection to this Court deciding the Petition on the papers in lieu of a hearing and have provided the records on which they rely to oppose the Petition. (Response to Order to Show Cause ("Response") at 1–2, ECF No. 8.) They assert that the facts of this case are similar to those at issue in another habeas petition resolved by this Court: *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.). (*Id.* at 2.) Accordingly, Respondents "adopt the Government's Memorandum of Law" filed by the respondents in that action. (*Id.* (citing *Rodriguez-Acurio*, No. 25-cv-6065, ECF No. 14.).)

---

[1] The Petition also seeks an order prohibiting Mr. Martinez Enamorado's removal from the United States and transfer from the Southern District of New York, Eastern District of New York, or District of New Jersey pending adjudication of the instant petition, an order requiring Respondents to show cause why the writ should not be granted within three days, and a hearing on the Petition five days after that response. (Pet. at 11.) The Court has effectively granted such relief through the issuance of a February 12, 2026 Order to Show Cause, which required Respondents to provide their response to the Petition by February 16, 2026, at the latest, and prohibited Respondents from removing Mr. Martinez Enamorado from the United States or transferring him outside of the Eastern District of New York, Southern District of New York, and District of New Jersey absent further order of the Court. (*See* ECF No. 4.)

Respondents argue that ICE's detention of Mr. Martinez Enamorado falls under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (*Id.* at 1.) According to Respondents, Section 1225(b)(2) requires Mr. Martinez Enamorado's detention, and he has no right to any additional process under the Due Process Clause. Respondents' position is that any noncitizen who entered the United States without authorization at any time is subject to detention under Section 1225(b)(2), notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

Respondents are incorrect for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal docketed*, No. 26-219 (2d. Cir. Feb. 2, 2026), and that decision is incorporated by reference in its entirety in this Order.

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Id.* at *22. Here, Mr. Martinez Enamorado is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him, Mr. Martinez Enamorado had been living in New York since around 2016. He is the husband of a U.S. citizen, works in construction to support his U.S. citizen wife and U.S. citizen mother-in-law, and had hoped to soon begin the process for applying for lawful permanent resident status.

Respondents offer no new arguments to support their position that *any* non-citizen apprehended in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (*See* Response at 1–2.) The vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2).

3

*See Barco Mercado v. Francis*, \_\_ F. Supp. 3d \_\_, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases raising this issue are on appeal.[2] The Seventh Circuit recently suggested that Section 1225(b)(2) does not apply to noncitizens who are already residing in the United States. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[3] The Fifth Circuit recently reached the opposite conclusion. *Buenrostro-Mendez v. Bondi*, \_\_ F. Supp. 3d \_\_, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

---

[2] *See, e.g.*, *Cunha v. Moniz*, 6:25-cv-6532 (W.D.N.Y. Nov. 25, 2025), *appeal docketed,* No. 25-3141 (2d. Cir. Dec. 12, 2025); *Chen v. Almodovar*, 1:25-cv-8350 (S.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3169 (2d. Cir. Dec. 17, 2025); *Candido v. Bondi*, No. 1:25-cv-867 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2d. Cir. Dec. 17, 2025).

[3] In *Castanon-Nava*, the Seventh Circuit reasoned:

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

161 F.4th at 1061 (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

This Court has conducted its own careful assessment of the law and the facts. In the absence of Second Circuit precedent to the contrary, this Court continues to conclude, as set forth in detail in *Rodriguez-Acurio*, that Respondents' position that Section 1225(b)(2) requires the detention of a non-citizen apprehended in the interior of the United States notwithstanding the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text.[4]

Moreover, nothing in the record shows that ICE arrested and detained Mr. Martinez Enamorado under Section 1225(b)(2) rather than Section 1226(a). (*See* Response at 4 (Form I-200 reflecting that Mr. Martinez Enamorado was arrested on a warrant pursuant to "sections 236 and 287 of the Immigration and Nationality Act and part 287 title 8, Code of Federal Regulations," which correspond to 8 U.S.C. §§ 1226 and 1357 and 8 C.F.R. §§ 287.1–287.12, not 8 U.S.C. § 1225(b)(2).) Respondents first invoked Section 1225(b)(2) as the basis for Mr. Martinez Enamorado's detention in the course of this litigation. (Response at 1.) The Supreme Court has recognized that a "post-hoc rationalization" first articulated in litigation carries little weight. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*, 591 U.S. 1, 21 (2020) (quoting *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971)); *see also Islander E. Pipeline Co., LLC v. Connecticut Dep't of Env't Prot.*, 482 F.3d 79, 95 (2d Cir. 2006) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). As courts in the Southern District of New York have recognized, "the Court

---

[4] Respondents rely on *Saamishvili v. Flanagan*, et al., No. 25-cv-6178, 2026 WL 377574, at *3 (E.D.N.Y. Feb. 11, 2026), to support their expansive interpretation of Section 1225(b)(2) in this case. (ECF No. 10). This Court respectfully disagrees with *Saamshvili* about the scope of Section 1225(b)(2). Additionally, the petitioner in that case was subject to an order of removal, and it is unclear whether the removal order was final such that a different INA provision—8 U.S.C §1231(a)(2)(A)—governed the petitioner's detention pending removal.

cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this litigation." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025); *see also Yao v. Almodovar*, No. 25-cv-9982, 2025 WL 3653433, at *4 (S.D.N.Y. Dec. 17, 2025) (discrediting respondents' post-hoc justification for petitioner's detention and finding that "ICE is properly held to its representation, *when it detained* [petitioner], as to the legal basis for that action" (emphasis added)); *see Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759, at *5 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same).

Accordingly, ICE's detention of Mr. Martinez Enamorado is governed by the discretionary detention framework set forth in a different provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(a). For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Martinez Enamorado has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. *See Rodriguez-Acurio*, 2025 WL 3314420, at *25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection).[5] ICE's detention of Mr. Martinez Enamorado without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

---

[5] Although the Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

6

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, Respondents' detention of Mr. Martinez Enamorado since February 11, 2026, violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Martinez Enamorado without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used to detain Mr. Martinez Enamorado because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on February 11, 2026. Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Martinez Enamorado without notice or an opportunity to be heard. Although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, there is absolutely nothing in the record showing that Mr. Martinez Enamorado presents a flight risk or danger to the community. Mr. Martinez Enamorado has no criminal history, is married to a U.S. citizen, and is the primary breadwinner for his wife, mother-in-law, and sister.

Accordingly, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Martinez Enamorado's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings—Respondents' detention of Mr. Martinez Enamorado with no notice or opportunity to be heard violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Martinez Enamorado was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section 1225(b)(2).[6] *See Lopez Benitez*, 795 F. Supp. 3d at 486; *Rueda Torres*, 2025 WL 3168759, at *5.

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

---

[6] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Martinez Enamorado, that provision is plainly inapplicable to him. Mr. Martinez Enamorado is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420, at *19. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id*. at *15. Accordingly, ICE's detention of Mr. Martinez Enamorado since February 11, 2026, is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Martinez Enamorado from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Martinez Enamorado is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Martinez Enamorado is not rendered meaningless.

Additionally, Mr. Martinez Enamorado "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of" the status quo ante. *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements"). Prior to his unlawful detention, Mr. Martinez Enamorado was not subject to any electronic monitoring requirements by ICE. Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, and "restor[ing] . . . the status quo ante," *Khabazha*, 2025 WL 3281514, at *8, requires that Respondents release Mr. Martinez Enamorado without any condition for electronic monitoring, including but not limited to GPS monitoring.

## CONCLUSION

Accordingly, for all of these reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio,* the Petition is GRANTED in part. Respondents must coordinate with Petitioner's counsel and thereafter release Petitioner, without any electronic monitoring,

including but not limited to GPS monitoring, into the physical care of their counsel or another mutually agreed upon person at the earliest possible time agreed upon by the parties, but no later than **February 13, 2026, at 11:00 p.m**. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money. Respondents shall confirm compliance with these directives, including by identifying the individual to whom Petitioner was released and when and how Mr. Martinez Enamorado's belongings were returned to him, in a filing on the docket by February 13, 2026, at 11:59 p.m. Additionally, pending the issuance of any final removal order against Mr. Martinez Enamorado, Respondents are enjoined from denying Mr. Martinez Enamorado bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Order.

At this time, the Court reserves ruling on the request for attorneys' fees and costs under the Equal Access to Justice Act set forth in the Petition. Mr. Martinez Enamorado may file an application for attorneys' fees and costs incurred in pursuing this action by May 14, 2026.

The Court concludes that the other arguments set forth in the Petition for granting Mr. Martinez Enamorado the requested relief, including arguments that the detention violates the APA and the Fourth Amendment to the U.S. Constitution, are now moot and unnecessary to resolve.

The Show Cause hearing scheduled for February 17, 2026, at 12:30 p.m. in the Alfonse D'Amato U.S. Courthouse is therefore adjourned. The matter is held in abeyance.

Dated: Central Islip, New York
      February 13, 2026

                                                */s/ Nusrat J. Choudhury*
                                                NUSRAT J. CHOUDHURY
                                                United States District Judge